United States District Court
Southern District of Texas
FILED

FEB 15 2019

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNVILLE DIVISION

**Klager E. Drake**                    Case Number: **B-19-019**

v.

**M. AMCZYK, RAKHEE P. SHARMA, PAWAN
R. SHARMA, 7-ELEVEN INC., TEXAS LOTTERY
COMMISSION, AND MULTI-STATE LOTTERY
ASSOCIATION**

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, Klager E. Drake, hereinafter referred to as "Plaintiff" and brings this action against the above Defendants as alleged herein.

## PARTIES

1.     Texas Lottery Commission (herein are referred to as "TLC") is an organization that regulates the Texas Lottery. 7-Eleven, Inc., and 7-Eleven LLC operates franchises convenience stores, which is headquartered in Irving, Texas. Defendant Multi-State Lottery Association is (hereon referred to as "MUSL"). Rakhee P. Sharma and Pawan R. Sharma are franchises owners of a 7-Eleven store pursuant to this civil litigation. Rakhee P. Sharma and Pawan R. Sharma are referred to as 'Sharma.' Mavis L. Wanczyk was the winner of the Power-ball drawing to this civil litigation. Mavis L. Wanczyk shall be referred to as 'Wanczyk.' This civil action is concerning the Powerball lottery game. Powerball is an American lottery game offered by 44 states, the District of Columbia, Puerto Rico and the US Virgin Islands.

1

2.     On information and belief MULTI-STATE LOTTERY ASSOCIATION ("MUSL") is a corporation that administers Powerball is an association of member lotteries with its principal place of business at: 4400 N.W. Urbandale Drive, Urbandale, Iowa 50322. MUSL may be served with process by its registered agent Wayne Dolezal, 4400 N.W. Urbandale Drive, Urbandale, Iowa 50322.

3.     MUSL is in the business of, among other things, operating lottery games. MUSL's members include the Arizona Lottery, Arkansas Lottery, Colorado Lottery, Connecticut Lottery Corporation, D.C. Lottery, Delaware State Lottery, Florida Lottery, Hoosier Lottery, Idaho Lottery, Iowa Lottery, Kansas Lottery, Kentucky Lottery Corporation, Louisiana Lottery Corporation, Maine Lottery, Minnesota State Lottery, Missouri Lottery, Montana Lottery, Nebraska Lottery, New Hampshire Lottery Commission, New Mexico Lottery Authority, North Carolina Education Lottery, North Dakota Lottery, Oklahoma Lottery, Oregon Lottery, Pennsylvania Lottery, Rhode Island Lottery, South Carolina Education Lottery, South Dakota Lottery, Tennessee Education Lottery, Texas, Texas Lottery, U.S. Virgin Islands Lottery, Wisconsin Lottery, and West Virginia Lottery. Thus, MUSL is doing business in the state of Texas through the Texas Lottery and because Powerball and other lottery games are assessable in Cameron County, this Court have jurisdiction over Defendant MUSL.

4.     On information and belief Texas Lottery Commission ("TLC") is a State Agency doing business in the state of Texas, which may be served by serving the Attorney General, Kenneth Paxton, Office of the Attorney General, 300 W. 15 Street, Austin, Texas 78701. This Court have jurisdiction over Defendant TLC.

5.     Defendant, GARY GRIEF, ("GRIEF") is an individual who is a citizen of Texas. At all times relevant to this suit, GRIEF was employed by and served as the Executive Director of the LOTTERY COMMISSION. GRIEF may be served at the offices of the LOTTERY COMMISSION at 611 E. 6 Street, Austin, Texas 78701. The Court has jurisdiction over Mr. Grief.

6.     On information and belief 7-Eleven, Inc., a corporation, is headquartered and doing business in the state of Texas who can be served with summons and complaint through its agent of service: Corporate Creations Network Inc, 2425 W Loop South, Number 200, Houston, TX 77027. 7-Eleven is doing business in the state of Texas, and in Cameron County, therefore, the Court has jurisdiction over Defendant 7-Eleven, Inc.

7.     On information and belief Rakhee P. Sharma and Pawan R. Sharma are 7-Eleven franchises owners who can be served with summons and complaint through its agent of service by serving Rakhee P. Sharma or Pawan R. Sharma: 8312 Bartley Cir., Plano, Texas 75025. Defendants Sharma's are doing business in the state of Texas as franchises owners of a 7-Eleven, which is incorporated in Texas, thus the Court, have jurisdiction over Defendants Sharma's.

8.     On information and belief Mavis L. Wanczyk is the Powerball lottery 2017 winner of the Seven Hundred Million dollar Powerball. The last known address for Ms. Wanczyk is: 23 Brightwood Street, Chicopee, MA 01020. However, since winning the power-ball Ms. Wanczyk first attempted to collect the winnings as an unknown winner, but she wasn't able to do so. Presently Ms. Wanczyk is hiding her address, but on information and belief, Ms. Wanczyk is possibly residing Cameron County. Thus, Wanczyk may have to be served by publication and or by serving her last known legal counsel of record.

3

## JURISDICTION & VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 USC §§ 1331 and 1338(a).

10.     Additionally, this Court has personal jurisdiction over MUSL because, *inter alia*, MUSL has committed, aided, abetted, contributed to, and/or participated in the commission of deceptive and unfair practices in this judicial district and elsewhere that led to foreseeable harm and injury to the Plaintiff.

11.     This Court also has personal jurisdiction over MUSL because, among other things, MUSL has established minimum contacts within the forum such that the exercise of jurisdiction over MUSL will not offend traditional notions of fair play and substantial justice. On information and belief, MUSL does business in the State of Texas. On information and belief, the acts and transactions complained of herein were, in part, carried out, made effective, and/or had effect on consumers like the Plaintiff in the State of Texas.

12.     Venue is proper in this judicial district pursuant to 28 USC §§ 1391(b), 1391(c) and 1400(a), in that MUSL has committed acts of deceptive and unfair practices in this judicial district, and the Court has personal jurisdiction over MUSL. Venue is also proper in the judicial district where corporation is doing business. 7-Eleven has over 667 stores in Texas and 14 stores in Brownville, Texas. MUSL and TLC is also doing business through each of the 7-Eleven stores in Texas. Safeway Inc is headquartered in the Northern District of California. 15 Wright, Miller & Cooper §3811. Safeway has sufficient contacts in the state of California. *Langton v. Cbeyond Comm., LLLC*. Pursuant to 28 USC §1391 (1), a judicial district which any defendant resides. The Court has jurisdiction over Defendants MUSL, 7-Eleven, TLC, because they are corporations and are deemed to reside in any juridical district where it is subject to personal jurisdiction at

4

the time the action is commenced. 28 USC §1391(c), *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1210 n.3 (10th Cir.2000). Further, the Court likewise have jurisdiction over the 7-Eleven franchise owners and the director of TLC, because all of the defendants are residents of the state of Texas, which this district is located. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because all Defendants MUSL, 7-Eleven, TLC, transacts business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, Defendants have advertised in this district and have received substantial revenue and profits from selling their games in this district; therefore, a substantial part of the events and omissions giving rise to the claims occurred within this district.

13.    Plaintiff invokes this Court's jurisdiction of this action also under, 15 USC §2301, 28 U.S.C. § 1331, §1332, §1343. And supplemental jurisdiction under 28 U.S.C. § 1367, over state law violations. When federal jurisdiction is founded upon diversity of citizenship under 28 U.S.C.S. § 1332, the district court is bound to apply state substantive law to Plaintiff's claims. Plaintiff pleads supplemental jurisdiction under 28 U.S.C. § 1367, over state law claims. Plaintiff pleads multiparty action pursuant to 28 USC §1391(g), and 28 USC §1391(a)(1), (b)(1). 42 USC §1981, and 42 USC §1983.

14.    This Court has jurisdiction pursuant to 28 U.S.C § 1332 because the amount in controversy greatly exceeds $75,000.00, exclusive of interest and costs, and Plaintiff and Defendants are citizens of different states, creating diversity of jurisdiction.

15.    Plaintiff invokes the Court's jurisdiction of this action under USC § 1331, 1332. Plaintiff claims federal jurisdiction pursuant to Article III § 2, which extends the jurisdiction to cases arising under the U.S. Constitution.

16.    Federal Trade Commission Act 15 U.S.C. §§ 41-58 [(FTC Act) (15 USC §45) Section 5] is conferred on this Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States, which confer original jurisdiction

upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of consumers, "Consumer Protection Laws." Federal Jurisdiction is conferred on this Court by the Federal Trade Commission Act (FTC Act) (15 USC §45), Section 5. Plaintiff also pleads that Defendants violated the Lanham Act 15 USC §1125.

17.   Plaintiff invokes the Court's jurisdiction of this action under USC § 1331, 1332. Plaintiff claims federal jurisdiction pursuant to Article III § 2, which extends the jurisdiction to cases arising under the U.S. Constitution. This Court also has jurisdiction to 28 U.S.C. §1331, §1332, there is complete diversity of citizenship between the parties.

18.   Although Rakhee P. Sharma and Pawan R. Sharma are individuals, they are relevant to the above proceeding because they are 7-Eleven franchises owners who are indispensable to the above litigation and resides of the state of Texas, 28 USC §1391. Since the Court has jurisdiction over 7-Eleven, Inc., and 7-Eleven LLC the Court likewise have jurisdiction in this case over the franchises owners.

19.   The Powerball is a nation wide game that is available in the state of Texas. This controversy is pursuant to the franchises owners hiring undocumented / illegal alien workers and or untrained workers who gave the Plaintiff incorrect information regarding the cut-off time or closing time to play the Powerball lottery.

20.   This Court has jurisdiction over Plaintiff's federal claims, under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983, §§ 1981, and 1988. Plaintiffs 14th Amendment Rights were violated under the Constitutional of the United States. Plaintiff invokes this Court's jurisdiction of this action under federal question, pursuant to 42 USC § 1983, Civil Rights Act of 1964: 42 USC § 2000a, § 2000a-2, §2000a-3, § 2000a-1, §2000b-2, 28 USC § 2201, 28 U.S.C. § 1331, 1343.

21.   Jurisdiction is also allowed in the above cause of action because it asks a federal question and is also a diversity action.

## FACTUAL ALLEGATIONS

22. This lawsuit involves 7-Eleven Inc, one of its franchises owned by Defendants Rakhee P. Sharma and Pawan R. Sharma and other defendants named herein. In August of 2017, the Powerball had reached $700,000,000.00 (Seven Hundred Million Dollars).

23. This case is not about picking winning numbers, but the focus of this case is about the fact that the Plaintiff as a citizen, has the right to play the Powerball like any other citizen, but those rights were taken away from him by the defendants negligence, customs, and policies.

24. Moreover, this case is not about how many numbers that the Plaintiff successfully picked for the Powerball drawing. The Plaintiff plans to argue before the jury that if he failed to pick any of the winning numbers that this would nevertheless be a credible case, because the focus should not be on how many the winning numbers the Plaintiff picked, but the restriction of the Plaintiffs rights. Rosa Parks's case wasn't about a seat on a bus, but her right as a citizen of the United States to ride public transportation without giving up her seat to a white person.

25. The Powerball game playslips that consumer's fill out to obtain a Lotto ticket does not have the cut-off or closing time when the game can no longer be played on the playslips. Since the Plaintiff was not a frequent Lotto player, he had to asked a clerk employed at the 7-Eleven convenience store when was the cut-off time to play the Powerball lotto game. The clerk advised the Plaintiff of the wrong time, 9:30 p.m., and when the Plaintiff attempted to play his numbers at 9:15 p.m. on August 23, 2017, he was told that the ability to play the Powerball lottery was closed. The 7-Eleven convenience store referenced herein in Carrollton, Texas shall be referred to as '7-11S.'

26. The Plaintiff returned to his home, watched the Powerball drawing and he discovered the winning numbers. The very next day on August 24, 2017, the Plaintiff

returned to the 7-11S and spoke with the store manager, Defendant Rakhee P. Sharma about the matter. Rakhee said, "I am sorry about that, the employee gave you the wrong time." She further stated that the person that the Plaintiff spoke to was new and did not know the lottery rules. To the best of the Plaintiffs recollection, Defendant Sharma further said that the employee was new in the Country, but she didn't state whether he was a U.S. citizen. Defendant Rakhee went on to say that this new employee that gave the Plaintiff the wrong information did not know the lottery rules or the correct cut-off time. Defendant Rakhee then asked if she could give the Plaintiff a free cup of coffee after her employee caused the Plaintiff to loose millions.

27.    Plaintiff wrote letters to Defendants Sharma, 7-Eleven, and TLC inform- ing all parties of the controversy, but neither party responded to the Plaintiffs letters. Plaintiff believed the unknown 7-11S worker was an illegal alien.

28.    Immigration and Customs Enforcement (ICE) agents targeted dozens of 7- Eleven stores in 2017, arresting 21 people in a nationwide immigration sweep. The state of Texas was part of the ICE round up and raids. There is little doubt in the Plaintiffs mind that the employee of the 7-Eleven store in question would have been also a target of this federal raid. After Plaintiff's compliant to 7-Eleven the unknown employee vanished.

29.    The Immigration and Customs Enforcement supervisor made a statement regarding the raids and why they were enacted:

> "Businesses that hire illegal workers are a pull factor for illegal immigration and we are working hard to remove this magnet. ICE will continue its efforts to protect jobs for American workers by eliminating unfair competitive advantages for companies that exploit illegal immigration,"

8

30.    7-Eleven, Inc shall be referred to hereon simply as "7-Eleven." 7-Eleven comment regarding the raids by ICE was that the company had nothing to do with their franchise owners, which was an attempt to distance the company from the practice of hiring illegal immigrates. A spoke person for 7-Eleven further stated:

> "The individual stores are franchises that belong to independent business owners, who "are solely responsible for their employees, including deciding who to hire and verifying their eligibility to work in the United States."

31.    7-11S was negligent in hiring undocumented and or illegal aliens and untrained workers who gave the Plaintiff the incorrect cut-off or closing time for the Powerball August 2017 lottery game. The Plaintiff plea that 7-Eleven and Alcon is vicariously responsible for their franchises owner's conduct. MUSL is vicariously responsible for its agents, 7-Elevens and Lottery Commissions conduct.

32.    As a result of the conduct of the 7-Eleven's franchises, the Plaintiff was injured as a consequence of being provided false, misleading, and incorrect information on when the Powerball lottery game closed.

33.    On the back of the Powerball game or playslips, which are used to play, *promote*, and *advertise* the Powerball game does not include a cut-off time to play the game to consumers. The game or playslips as seen in the annexed **Exhibit 1** provides information to consumers, but there are no indication of any cut-off or closing time to play the Powerball lottery. Thus, the MUSL and Lottery Commissions are responsible for not providing this critical information to consumers of when the game closes or its cut off time. The MUSL and Lottery Commissions are guilty of advertising and promoting a lottery game without posting fundamentally important information to play the game.

9

34.    Consumers are baited by the amount of money offered to play these lottery games, just as the Plaintiff was baited, but the Plaintiff was not provided that critical information of knowing the Powerball lottery cut-off time to play the game or when the Powerball closes. The MUSL does not provide even instructions of how to contact the Lottery Commissions for a cut-off time or closing time to play their games.

35.    7-Eleven is a bonafided legal representative of the MUSL and the Lottery Commissions. The 7-Eleven stores have Lottery supplies in their stores, which include playslips, scratch off games, and other Lottery products to ensure consumers that the 7-Eleven stores are a genuine representative of the MUSL and Lottery Commissions.

36.    The Powerball playslips are misleading consumers through commerce because it acts as an *advertisement* but does not furnish enough information for consumers to be properly informed how to play Powerball, such as to the cut-off time to play the Powerball lottery game or even a statement notifying consumers to check with their state Lottery Commissions for the cut-off or closing times to play the lotto games.

37.    Plaintiff did not have an opportunity to play the August 23, 2017 Powerball like other consumers who did play the game, even if they did not pick the winning numbers, because of the negligence of Defendants MUSL and its agents, Defendants 7-Eleven, and Sharma. Thus, as one alternative to compensate the Plaintiff for his damages, he is requesting is that the August 23, 2017 Lotto Powerball drawing be rescinded as pled herein. *See* Plaintiffs Declaration **Exhibit "A."**

38.    Defendant Mavis L. Wanczyk won the 2017 August Powerball. The Plaintiff wrote a letter to Defendant Mavis L. Wanczyk, and tried to serve a notification letter on Ms. Wanczyk. Plaintiff letter to Ms. Wanczyk was notifying her of the controversy, but the process server, who was a sworn peace officer, could not locate Ms. Wanczyk after she won the lottery even after multiple attempts.

10

39.    In an effort to obtain the name of the employee at the 7-11S who the Plaintiff believe wasn't a United States citizen, but nevertheless was employed at the 7-Eleven store owned by Defendant Sharma, the Plaintiff to file a Rule 27 to take the deposition of Defendant Rakhee P. Sharma to obtain the name of the undocumented and or illegal alien worker and untrained worker. However, the court denied the Plaintiffs Rule 27 to Perpetrate Depositions prior to suit. Plaintiff did serve a copy of the Rule 27 on Defendant Sharma and 7-Eleven.

## FIRST CAUSE OF ACTION

### COUNT 1. NEGLIGENT AND NEGLIGENT MISREPESENTATION

40. Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

41. Sharma, MUSL, 7-Eleven, and TLC were negligent and misrepresented facts to the Plaintiff.

42. Defendant MUSL and TLC was negligent in not placing on the Powerball game playslips the cut-off time or closing time to play the August 2017 Powerball lottery game. Annexed is **Exhibit 1** original playslips for the Powerball lottery. The game playslips contained information, but it does not state the time that the Powerball game is cut-off or closed for the public to play the lottery game. This was important information to the Plaintiff, which he sought to obtain it from an agent of Sharma, MUSL, 7-Eleven, and TLC to his demise.

43. On August 23, 2017 the Plaintiff asked an employee of a 7-Eleven store (7-11S) located at 2230 Marsh Lane, in Carrollton, TX 75006 what was the cut-off or closing time to play the Powerball lottery game. The employee advised the Plaintiff 9:30 p.m. When the Plaintiff attempted to play the August 23, 2017 Powerball at 9:15 p.m., he was told that the game was closed and that the game closed at 9:00 p.m. As such, an agent, or representative of Defendants Sharma, MUSL, 7-Eleven, and TLC provided the incorrect cut-off or closing time to the Plaintiff to play the August 2017 Powerball to his demise.

44. On August 23, 2017 the Plaintiff returned to his home and watched on television the Powerball lottery drawing to the Plaintiffs demise. The next day, Plaintiff

12

drove to the 7-Eleven store where the employee told the Plaintiff the wrong cut-off time and spoke with the store manager, Rakhee P. Sharma on August 24, 2017. Defendant Sharma said that she was sorry that her employee, who was new provided the Plaintiff the wrong cut-off time to play the Powerball lottery. Defendant Sharma, a 7-Eleven franchise owner was negligent in hiring an undocumented and or illegal alien and untrained employee to work directly with the public.

45.    Since Defendant Sharma is an authorized agent of the Texas Lottery Commission (TLC), the MUSL, TLC, and 7-Eleven are responsible for its agents conduct. MUSL and TLC was negligent in not placing the cut-off or closing time on the back of the game playslips. MUSL and TLC was also negligent in not advising the consumers on the back of the Powerball game playslips that they should check with their state lottery commissioners offices for information regarding the cut off or closing time to play the Powerball.

46.    Defendants MUSL, 7-Eleven, TLC and Rakhee P. Sharma, its employees, agents, and representatives were negligent of one or more of the following negligent acts and/or omissions:

   a).    Defendant Rakhee P. Sharma, a franchise owner of a 7-Eleven store referenced herein was negligent in hiring an undocumented and or illegal alien to work with the public at the 7-Eleven store referenced herein;

   b).    Defendant Rakhee P. Sharma, a franchise owner of a 7-Eleven store referenced herein was negligent in hiring untrained workers or employees to work with the public at the 7-Eleven store referenced herein;

   c).    Defendant Rakhee P. Sharma, a franchise owner of a 7-Eleven store referenced herein was negligent in hiring an untrained, undocumented, illegal alien worker that provided the Plaintiff with the wrong cut off or closing time to play the August 23, 2017 Powerball lottery;

d).   Defendant MUSL, and 7-Eleven was negligent in not employing a training program for its franchise owners, and if it does, MUSL and 7-Eleven was negligent for not employing an effect training program for its franchise owners like Defendant Sharma;

e).   TLC was negligent in not employing a better training program for its agents and representative, and if it does, TLC was negligent for not employing an effect training program for its agents and representatives;

f).   MUSL was negligent in not employing a better training program for its agents and representative, such as TCL, and 7-Eleven, and Sharma, and if it does, MUSL was negligent for not employing an effect training program for its agents, representatives, and Commissions;

g).   MUSL was negligent for failing to properly inform consumers in writing on the back of the playslips and in the convenience stores that promote their gaming products by posting signs or posters of the cut off time or closing time to play the Powerball lottery game so that new or inexperienced employees could not provide incorrect information to consumers as what occurred to the Plaintiff;

h).   Rakhee P. Sharma failure to warn the Plaintiff and other consumers that the store hires undocumented / alien workers that might not understand the English language, or the workers might not be U.S. citizens, and might not be properly trained or provide correct answers to regarding the Lottery;

i).   Even though Defendant 7-Eleven has alleged that franchises are in business for their own self's, Defendant 7-Eleven is nevertheless liable for the actions of its franchises that caused injury to Plaintiff being that these franchises are doing business by displaying the 7-Eleven logo, which would make consumers believe that it is the Defendant 7-Eleven corporate owned stores instead of a self-employed single person;

14

j).    MUSL, TCL, and 7-Eleven, and Sharma are equally liable for those who represent it and make profit from its arrangements when one of its agents, or representatives causes injury to a consumer. MUSL failed the Plaintiff and other consumers by not simply placing on the back of the game playslips in writing the cut off or closing time to play the Powerball lottery, or at least instructions on the back of the playslips that the consumer should contact their state lottery commissions for cut off or closing times to play the Powerball lottery;

k).    Defendants MUSL, TCL, and 7-Eleven, and Rakhee P. Sharma and Pawan R. Sharma were negligent and put profits before the good will and ethical standards of consumers, including the Plaintiff;

l).    Defendants MUSL, TCL, , and 7-Eleven, and Rakhee P. Sharma and Pawan R. Sharma failing to abide by state and federal consumer laws;

m).    Defendants TLC knew at the time it printed the Powerball game play slips that the playslips did not contain the vital information of when the game closes to the Plaintiffs demise. MUSL was also aware of this problem.

n).    Defendant Rakhee P. Sharma knew at the time the undocumented / alien worker or the new untrained employee advised the Plaintiff the wrong time that the Powerball closes that the employee wasn't trained properly, wasn't versed in the English language, which resulted in the Plaintiffs demise. Franchise owner, Defendant Sharma was careless and wasn't concerned about the consequences of her actions but only profit by hiring individuals who would accept less pay and no benefits. An employer cannot legally pay benefits to undocumented / illegal alien workers.

o).    The undocumented / alien worker had no badge to indentify his name. Defendant Rakhee P. Sharma failed to warn or alert consumers that the

15

employee who gave the Plaintiff the wrong time for the cut-off or closing to play the Powerball lottery game that he was a new employee in training. Moreover, Defendant Sharma failed to supervise the undocumented / illegal alien worker or untrained worker that she knew was not versed in the English language or the lottery rules and regulations.

p).    All off the Defendants above failed to be truthful, to be informative, and honest with the Plaintiff and other consumers;

q).    MUSL and TLC failed to properly oversee, manage, direct, and train its agents and representatives which resulted in the Plaintiffs own demise.

47.    Plaintiff is entitled to compensation for Defendants negligence and negligent misrepresentations as described herein in this petition. Plaintiff damages are substantial because of the carless actions of the Defendants. If the Plaintiffs alternative for compensation is not acceptable as pled in this petition, Plaintiff sues the Defendants MUSL, 7-Eleven, and Sharma for the total sum of $700,000,000.00 (Seven Hundred Million Dollars), which is four (4) times the amount of the August 23, 2017 Powerball lottery for the deceptive, unfair, and fraudulent information provided to the Plaintiff from Defendant Sharma's undocumented and or illegal alien worker who was also untrained. The Plaintiff also seeks exemplary and special damages against the Defendants for knowingly with intent not to properly train its agents, employees, staff, and Commissions which resulted in significant mental anguish to the Plaintiff.

## SECOND CAUSE OF ACTION

### COUNT 2.    GROSS NEGLIGENCE

48.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

49.    Defendants MUSL and TLC its, agents, employees, and representatives were grossly negligent because they knew or should have known that the cut off time or closing time to play the Powerball was not assessable to consumers on the game playslips, or posted in the 7-Eleven stores that market and sell lotto tickets.

50.    7-Eleven, and Rakhee P. Sharma are agents for the MUSL and TLC. The posting of signs in plain sight of the cut-off or closing time to play the Powerball Lottery in the 7-Eleven stores would have been information that is vital to playing the game and would have prevented the lost that occurred to the Plaintiff.

51.    Powerball lottery makes millions of dollars every year. However, even after the Plaintiff wrote letters to the TLC and to its agents Defendant 7-Eleven and Defendant Sharma, there were no efforts by MUSL or TLC or any other lottery commissions to have game playslips reprinted to incorporate the cut-off time to play the Powerball or any other of its many other lottery games. Defendant's conduct is gross negligence.

52.    Rakhee P. Sharma was grossly negligent in hiring an undocumented and or illegal alien worker and untrained worker that provided false and misleading information to the Plaintiff.  Defendant Rakhee P. Sharma was grossly negligent in not properly training her employees before allowing them to interact with consumers, and

17

providing consumers with false and misleading information. Even after complaining to 7-Eleven and the TLC in writing of the August 23, 2017 incident, it has not changed its playslips to include a cut-off time for the Powerball lottery. Nor did the 7-Eleven, TLC, or Rakhee P. Sharma respond to the letters the Plaintiff wrote them. Thus, there is no intent from these defendants to change their conduct that caused Plaintiff injuries.

53.    Moreover, the principle of *res ipsa loquitur* applies in this case. Plaintiff is entitled to the doctrine of *res ipsa loquitur* "if the evidence affords a rational basis upon which the jury can conclude that the elements of the doctrine required under state substantive law are present." *Id.* And in this case, Texas law supports *res ipsa loquitur*. The Plaintiff was injured as a result of Defendants MUSL and TLC failure to print on its games playslips the cut-off or closing times for the Powerball lottery. The Plaintiff was further injured on account of 7-Eleven's non-caring approach to its franchises owners of not having an opposition to its franchise owners hiring undocumented/illegal alien workers, and or untrained workers. And Defendants Sharma failures caused injury to the Plaintiff by her hiring an undocumented/illegal alien worker and untrained worker to undoubtedly save money. For the millions of dollars that the MUSL, TLC, and 7-Eleven make as profit off the Lottery, the implementation of the cut off time or closing on games playslips of when the game closes to the public would not have been unreasonable or costly, but it would have been necessary to ensure consumers such as the Plaintiff are not injured. However, the Defendants were not concerned about informing the public; but just profits that it makes off the gaming products it promotes, sales, or have an interest in.

54.    Defendants MUSL, 7-Eleven and Rakhee P. Sharma conduct were willful and wanton, without regards for providing necessary information to play the game, but a focus on profits only. Thus, the Plaintiff was injured in the follow ways:

18

1). By MUSL through its agents, representatives, and employees willfully and wantonly failing to post the cut-off or closing times on the playslips of the lottery games to play the Powerball Lottery;

2). By MUSL through its agents, representatives, and employees willfully and wantonly failed to include the cut-off and or closing times to play the Powerball and or Lottery games on its playslips or by signs at the agents stores such as 7-Eleven stores in plain sight for all consumers to read;

3). By MUSL and TLC failing to train its agents, representatives, and employees to properly inform the public when the cut off or closing times for their games such as the Powerball lottery and other Lottery games;

4). By the TLC and 7-Eleven failing to respond to the Plaintiffs letters, which indicate that TLC, 7-Eleven, and even the MUSL have no intention of correcting its failures which resulted in the injury caused to the Plaintiff;

5). By 7-Eleven failing to properly train its franchisees, Defendant Sharma, even though 7-Eleven is an authorized agent of MUSL and TLC;

6). By TLC and 7-Eleven not responding to the Plaintiffs letter indicates that these defendants sought wantonly to cover up and or hide the Plaintiffs losses and the harm caused to him and the fact that Defendant Sharma hire undocumented/illegal workers and untrained workers to serve the public;

7). Failure to take adequate precautions to reasonably to protect the Plaintiff and the general public from such re-occurrences demonstrates gross negligence by the Defendants;

8). MUSL failure to order the reprinted of games playslips to incorporate cut-off and closing time to play the Powerball, TLC failure to request MUSL to have playslips to incorporate cut-off and closing time to play Powerball, and MUSL failure to properly train, supervise and/or instruct its Commissions, and TLC failure to properly train, supervise and/or instruct

its agents such as 7-Eleven, and 7-Eleven failure to properly train, supervise and or instruct its franchises owners, its agents, representatives, and employees is gross negligence.

55.    As a direct and proximate cause of their actions, Defendants named herein are liable to the Plaintiff for punitive damages. Plaintiff seeks such damages against the Defendants as pled herein.

**THIRD CAUSE OF ACTION**

**COUNT 3.    VIOLATION OF 15 USC §§ 41-58, THE FTC ACT AND THE LANHAM ACT 15 USC § 1125.**

56.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

57.    Defendant MUSL and TLC violated the Federal Trade Commission Act (FTC) 15 USC §§ 41-58 by its unfair, deceptive acts and practices by not properly informing consumers of the cut-off or closing time to play the Powerball lottery and through its website, both affecting commerce.

58.    Defendant MUSL and TLC advertisements on its lottery playslips is misleading in that the playslips provides lots of information, but does not inform consumers of the cut-off or closing time to play the Powerball or other lottery games. MUSL and TLC is guilty of failures to disclose this important information where it can be readily obtained.

59.    Defendant MUSL and TLC target consumers like the Plaintiff to be excited on becoming a millionaire to generate a desire for the Plaintiff and other consumers to spend millions of dollars on MUSL and TLC lottery games, but MUSL

20

failed to spend a small percentage of their earnings to inform the Plaintiff and other consumers of the cut-off or closing time to play the lottery games which they administer and oversee.

60.     MUSL and TLC is fully aware that consumers would not know the cut-off or closing time of the Powerball and other games without asking one of its agents, because this information is not on the playslips. 7-Eleven stores are agents, representatives of Defendant MUSL and TLC. Thus, Defendant MUSL and TLC are knowingly violating of 15 USC §§ 41–48.

61.     Defendant MUSL and TLC unfair and misleading advertising through its playslips and website have injured the Plaintiff as well as other consumers, in particularly in the state of Texas.

62.     Defendants MUSL and TLC unfair and misleading advertising statements and omissions violate sub-section (a) of the FTC Act. The Defendant MUSL also violated the Lanham Act 15 USC § 1125:

(1) Any person who, on or in connection with any goods or ***services***, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, ***false or misleading description of fact***, or ***false or misleading representation of fact***, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, ***misrepresents the nature, characteristics, qualities,*** or geographic origin of his or her or another person's goods, ***services***, or commercial activities shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

21

63.    Defendants MUSL and TLC unfair and misleading advertising statements and omissions and failure to disclose are likely to continue to injure other consumers.

64.    Pursuant to 15 USC §1117, Plaintiff is further entitled to recover from Defendants MUSL and TLC the damages sustained by Plaintiff as a result of Defendants' acts in violation of 15 USC §§ 41–48(a).

65.    Pursuant to 15 USC §1117, Plaintiff is further entitled to recover from Defendant MUSL and TLC the costs of this action. Moreover, Plaintiff is informed and believes, and on that basis alleges, that Defendants' conduct was undertaken willfully and with the intention of causing harm to the Plaintiff, deception, and misleading to make profits from the Plaintiff and other consumers.

## FOURTH CAUSE OF ACTION

**COUNT 4.    DECEPTIVE AND UNFAIR TRADE PRACTICES (STATE)**

66.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

67.    Pursuant to Texas state law and federal law, Plaintiff pleads a cause of action against the Defendants MUSL, TLC, 7-Eleven, and Sharma, its management, agents and representatives and employees for deceptive and unfair trade practices through interstate commerce.

68.    The Plaintiff is a 'consumer' as defined under the Texas Deceptive Trade Practices Act and the Tex. Bus. & Com. Code Ann. §§ 17.41 through 17.63 (Vernon) Deceptive Trade Practices—Consumer Protection Act in that he sought to play the nationwide lottery game, the Powerball. The Defendants named herein engaged in acts or practices declared unlawful by Tex. Bus. & Com. Code §§ 17.45, 17.50 (Texas Deceptive Trade Practice Act). Plaintiff further shows as follows:

a. Defendant Rakhee P. Sharma, and her partners, employees, agents, and its representative's actions were deceptive when they failed to disclose the fact that she had hired undocumented/illegal alien workers and or untrained workers to work with the public at her 7-11 franchise store.

b. It was unfair practice for Sharma employees to give the Plaintiff the incorrect time that the Powerball Lottery closes to play the game on August 23, 2017.

c. It is an unfair and deceptive practice for 7-Eleven to allow its franchise owners, Defendant Sharma to hire undocumented/illegal alien workers, and or untrained workers when the franchise owners are using the 7-Eleven logo and making consumers feel that they are assured that they are dealing with a creditable company, corporate owned, but in fact, consumers are dealing with an individual.

23

d.  It was deceptive and unfair for the MUSL not to incorporate in its playslips the cut-off time or closing time to play the Powerball lottery games on the back of the game slips in August of 2017. An 'Unconscionable Action,' which is a fraud. This type of action is a violation under the Texas Protection Act, Tex. Bus. & Com. Code §§ 17.45(5), 17.50(a)(3) (prefatory language), and equitable relief pursuant to Tex. Bus. & Com. Code § 17.47(a). Attorney fees are allowable: Tex. Bus. & Com. Code § 17, (50(d).

Restitution Pursuant to Texas Deceptive Trade Practice Act:
Tex. Bus. & Com. Code § 17.47(d).

69.    The actions by Defendant MUSL and TLC of failing to incorporate the cut-off or closing time or when the Powerball lottery game closes on the game playslips or in the stores sell the lottery product by posting signs of the cut-off time through its agents and representatives were unfair and deceptive practices against the Plaintiff and consumers in general, which caused Plaintiff injury through their reckless and negligent actions with the full knowledge that this information was required; to know when the Powerball lottery game closes. This breach was a producing cause of the Plaintiffs damages. In fact, "[e]ven a truthful statement may be deceptive if it has a capacity or tendency to deceive." The capacity to deceive can be found without a finding that anyone has actually been deceived, *State ex rel. Mcleod v. Brown*, 294 S.E. 2d 781, 783.

70.    Texas Protection Act for consumers allows compensatory damages pursuant to Tex. Bus. & Com. Code § 17.50(b)(1), (3). False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division. The statute allows for punitive damages: Tex. Bus. & Com. Code § 17.50(b)(1)—treble damages. The lottery playslips are disturbed in commerce to 47 states including Texas. Therefore the action of MUSL is affecting commerce. The act also allows attorney fees under Tex. Bus. & Com. Code § 17.(50(d). "Goods" and "Services" broadly to include "intangibles" and "other property or services of any kind."

24

a. False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are unlawful and are subject to action by the consumer protection division under the federal statute: Fed. Trade Commission Act 15 U.S.C. §§ 41-58.

## FEDERAL UNFAIR AND DECEPTIVE TRADE PRACTICES

71.    Defendant MUSL and TLC also violated Federal Trade Commission Act (FTC Act) (15 USC §45) Section 5, [5(a)] because the Powerball Lottery invites consumers nationwide to play its games, but fail to inform the public when its cut off or closing time to play the game which is of upmost importance. The deceptive and unfair practices are:

1.    Without knowledge of the cut-off or closing time, the Plaintiff and other consumers could miss playing their numbers, which could cost them millions, as it has the Plaintiff;

2.    MUSL and TLC agents hiring undocumented and or illegal alien workers and untrained workers who were unable to speak the English language well, and who do not know the rules of the Lottery is a receipt waiting to create a problem, as in the case at bar;

2.    Injury to consumers cannot be reasonably avoided because the MUSL and TLC apparently decided not to reprint lottery playslips to incorporate the cut-off time or closing time for the lottery games, in particularly the Powerball Lottery game;

3.    As set forth in the Plaintiffs petition, the MUSL and TLC through its employees, agents, and or Commissions, and representatives are willing to mislead and misrepresent to the public that their agents which are convenience stores in the United States are trained to provide the correct information about their products, including the Powerball lottery, and other lottery games, and scratch off games. Factually, many employees of

25

convenience stores are not trained to answer basis questions regarding cut-off times to play the Powerball or other lottery games.

4.  Since MUSL, TLC, and 7-Eleven are not concerned about its franchises hiring undocumented and or illegal alien workers, and untrained workers, and the franchises are not concerned about hiring undocumented and illegal alien workers, and untrained workers these Defendants misleading representations, omissions, and practices are material.

5.  The failure to provide information that is critical to playing the Lottery games is not outweighed by the countervailing benefits to consumers.

72.  Pursuant to the deceptive trade practices acts as pled herein, an unfair or deceptive acts or practices, the Plaintiff do not have to show or prove that a claim or representation was intended to deceive, the Plaintiff only need to present to the Court that Defendants and its management, agents, employees, or representatives actions had the capacity effect or tendency to deceive. The capacity to deceive can be found without a finding that anyone has actually been deceived:

a).  Plaintiff only has to establish that an act or practice is unfair or deceptive;

b).  Plaintiff must demonstrate that the practice has an impact upon public interest.

73.  Since the public in general could be persuaded to accept the advise of an employee, staff member, or worker who is actually an undocumented/ illegal alien who is also untrained, believing that they should trust these workers because the place of business has the familiar 7-Eleven logo, this type of conduct would have an impact on other unsuspecting victims of such deceptive and unfair actions through commerce.

74.  Plaintiff suffered mental anguish as a result of the Defendants named herein deceptive acts. Defendant's behavior was carried out knowingly with intent to

26

deceive the Plaintiff as well as other consumers. Defendant MUSL, TLC, 7-Eleven, and Sharma violated Texas Fair Business Practices Act. For the reason that Defendants MUSL, TLC, 7-Eleven, and Sharma and its management, agents, and representatives acted knowingly, with intent not to disclose information that a consumer should be informed of such as the cut-off or closing time to play the Powerball lottery. Thus, Plaintiff is seeking to recover trebled damages and punitive damages from named Defendants.

75. It was a deceptive act or practice for MUSL and TLC, its agents, its employees, and Commissions, and or its representatives to violate federal and or state laws, affecting commerce:

a). By all the ways pled herein in this original petition;

b). By its representatives failures to disclose and to misrepresent to the Plaintiff who is a consumers as defined under the statute, the correct information regarding the cut-off or closing time to play the Powerball lottery game;

c). By MUSL and TLC, agents and representatives violating federal and state civil laws.

d). By Defendants 7-Eleven, and Sharma agents, employees, and representatives violating federal and state civil laws.

76. The above-described actions were committed by Defendants named herein and were committed willfully, wantonly and with reckless disregard for the rights of Plaintiff. The Plaintiff asks this Court for an injunction against MUSL and TLC, and that MUSL and TLC be ORDERED to retrieve all of the playslips for all lotto games nationwide, and ORDER Defendants MUSL and TLC to incorporate on its game playslips for the Powerball and other similar games that it administer the cut-off and or closing time for each of their games.

27

## FIFTH CAUSE OF ACTION

### COUNT 5.    FRAUD BY NONDISCLOSURE AND MISREPRESENTATION

77.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

78.    At all times relevant hereto, Defendants MUSL and TLC breached it's aforesaid duty of disclosure by representing, either affirmatively or by omission, that the aforementioned described defects by failing to disclose that the Powerball game playslips did not incorporate the cut-off or closing for the game closure.

79.    MUSL failed to disclose that it does not control its Commissions or even its agents, such as the TLC or its convenience stores, which in this case is controlled by 7-Eleven, and franchise owner Defendant Sharma, which sells its gaming products. Apparently Defendant 7-Eleven are not concerned whether or not these convenience store franchises of 7-Eleven and or its employee are trained properly.

80.    Defendant 7-Eleven failed to disclose that the convenience stores with the 7-Eleven logo were not corporate owned but franchises owned by individuals.

81.    Defendant 7-Eleven failed to disclose that it does not have a policy to oversee or control its agents or franchise owners, therefore if a franchise owner hires undocumented and or illegal aliens workers or untrained workers it is of no concern to Defendant 7-Eleven.

82.    Defendant Sharma misled and concealed the fact she hired undocumented and or illegal aliens workers or they were unreliable and untrained workers who is subject to providing untrue and misleading statements. Sharma failed to supervise these workers.

83.    Defendant Sharma had a duty to disclose to the Plaintiff that her employees were untrained, or in training, and Sharma wouldn't supervise these workers. These facts were material in that if proven, Plaintiff could have avoided injury by seeking the information that he requested from another store that sells lottery/gaming products.

84.    Defendant Sharma was deliberately silent when she new that she hired an employee that was an undocumented/illegal alien worker or that he was untrained and one that she failed to supervise could not be relied on for lottery/gaming information.

85.    Defendant 7-Eleven was deliberately silent when the corporate was fully aware that its franchise owners were hiring people who probably were undocumented/ illegal aliens workers, and were poorly trained with possible criminal backgrounds.

86.    By failing to disclose the aforesaid facts, MUSL, TLC, 7-Eleven, and Sharma intended to induce Plaintiff to take some action or reframe from acting.

87.    Plaintiff was injured as a result of the Defendants MUSL, TLC, 7-Eleven, and Sharma conduct as pled herein.

88.    Defendant Sharma never attempted to warn the Plaintiff that some of her employees where in fact undocumented and or illegal alien worker or they where grossly untrained or that she failed to supervise them in their duties. If these fact were disclose to the Plaintiff, which were known to Defendant Sharma, and probably known to Defendants TLC and 7-Eleven, this information could have easily prevented the Plaintiffs injuries, which were sustained by the Plaintiff on or about August 23, 2017.

89.    Plaintiff reasonably relied on Defendant Sharma employees because they were employees appearing of a highly recognized and reputable place of business (7-Eleven stores), and therefore the Plaintiff relied on the employee representations to his detriment as pled herein. Defendants MUSL, TLC, 7-Eleven, and Sharma benefited from

Plaintiffs' reliance, through purchasing lottery products, and buying other products that a convenience store market and sell such as gasoline, cigarettes, and other products.

90.    As a result, Plaintiff was damaged and injured. Based on the nondisclosure committed by Defendants MUSL, TLC, 7-Eleven, and Sharma. Plaintiff is entitled to, and hereby requests, a judgment against Defendants MUSL, TLC, 7-Eleven, and Sharma severally for actual damages, exemplary damages, costs, pre-judgment interest, post-judgment interest, all in amounts to be determined in accordance with applicable law and any other relief that the Court may grant the Plaintiff.

91.    MUSL, TLC, 7-Eleven, and Sharma violated the duty owed to Plaintiff by failing to exercise reasonable care and competence.

92.    Plaintiff reasonably, and justifiably relied on the misleading information provided by Defendant Sharma. The foregoing acts and omissions described above of the Defendants MUSL, 7-Eleven, and Sharma taken separately or collectively, constitute a direct and proximate cause of the Plaintiff's injuries and damages.

## SIXTH CAUSE OF ACTION

### COUNT 6.    BREACH OF IMPLIED CONTRACT

93.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

94.    Pursuant to Texas state law and federal law, Plaintiff pleads a cause of action against Defendants MUSL, TLC, 7-Eleven, and Sharma for breach of implied contract.

95.    MUSL is in the business of, among other things, operating lottery games. MUSL's members include the Arizona Lottery, Arkansas Lottery, Colorado Lottery, Connecticut Lottery Corporation, D.C. Lottery, Delaware State Lottery, Florida Lottery, Hoosier Lottery, Idaho Lottery, Iowa Lottery, Kansas Lottery, Kentucky Lottery Corporation, Louisiana Lottery Corporation, Maine Lottery, Minnesota State Lottery, Missouri Lottery, Montana Lottery, Nebraska Lottery, new Hampshire Lottery Commission, New Mexico Lottery Authority, North Carolina Education Lottery, North Dakota Lottery, Oklahoma Lottery, Oregon Lottery, Pennsylvania Lottery, Rhode Island Lottery, South Carolina Education Lottery, South Dakota Lottery, Tennessee Education Lottery, Texas Lottery, U.S. Virgin Islands Lottery, Wisconsin Lottery, and West Virginia Lottery. Defendant MUSL controls, prints, and oversee the lottery playing slips that it ships to all of the aforesaid states, including the state of Texas

96.    Every state's Lottery Commissions has a written contract with MUSL, and when a consumer of any of the above named states fill out a Powerball playslip, they also

31

also have an implied contract with MUSL, which it breached its contract with the Plaintiff by not providing the Powerball playslips with the cut-off or closing time for the Powerball game on August 23, 2017.

97.    7-Eleven owns and operates over seven thousand five hundred convenience retail stores in the United States. Each store has MUSL products and other Lottery and or gaming products for consumers to play. And each of the nearly 8,000 7-Eleven stores has an implied contract with consumers who play the Lottery at their stores. That contract consist of being honest to its customers and as a representative of MUSL and TLC and other Lottery Commissions, 7-Eleven has a responsibility not to be deceptive, untruthful, and not to employ individuals who provide misleading and untrue directions to consumers like the Plaintiff.

98.    In order to have a valid implied contract, there must be "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." See *In re Capco*, 669 F.3d at 279-80. In the case at bar, MUSL through Defendants TLC, 7-Eleven, and Sharma offered the implied contract to all of its patrons when they entered any of 7-Eleven convenience stores by filling out a playslips for the Powerball lottery or any of the other lottery games.

99.    Though the majority of patrons like the Plaintiff were unaware that 7-Eleven stores were mostly franchise owned and that the franchises owners hires undocumented and or illegal aliens workers or workers that are untrained, and unsupervised, however the 7-Eleven convenience stores are an extension of MUSL contract.

100.    The essential elements of a breach of implied contract action are "the existence of a valid implied contract, performance or tendered performance by the

32

Plaintiff, breach of the implied contract by the defendants, and damages resulting from the breach." *Fisher v. Blue Cross & Blue Shield of Tex., Inc.*, 2015 U.S. Dist. LEXIS 127297, 2015 WL 5603711, at *10 (N.D. Tex. 2015) (citing *Sports Supply Grp., Inc. v. Col. Gas Co.*, 335 F.3d 453, 465 (5th Cir. 2003)).

101.   Texas's law provides that "[w]here the contract provides for successive performances but is indefinite in duration it is valid for a reasonable time, but unless otherwise agreed may be terminated at any time by either party." But "[t]ermination of a contract by one party . . . requires that reasonable notification be received by the other party." *Id.* § 2.309(c). It does not appear that Defendant MUSL or TLC attempted to terminate its contract with the 7-Eleven consumers.

102.   An implied contract "arises from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." *Lection v. Dyll*, 65 S.W.3d 696, 704 (Tex. App. 2001, pet. denied) (quoting *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 569 (Tex. App. 1989, no writ)). The existence of an implied contract is "inferred from the circumstances." *Id.*

103.   As alleged herein, as a direct and proximate result of Defendants MUSL, TLC, 7-Eleven, and Sharma conduct it breached the contract with the Plaintiff. The Plaintiff seeks actual and punitive damages against Defendants MUSL, TLC, 7-Eleven, and Sharma it agents and representatives as alleged herein.

## SEVENTH CAUSE OF ACTION

### COUNT 7.    FAILURE TO WARN

104.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

105.    Defendant MUSL and TLC had a duty to alert the Plaintiff and the general public who desired to play the Powerball lottery that consumers must contact an authorize Lottery Commission to obtain cut-off or closing times for the Powerball lottery game because this important information is not on the playslips or available by signs in the 7-Eleven stores.

There are photographs of the entire store during the month of August 2017.

106.    Defendant 7-Eleven had a duty to alert the Plaintiff and the general public who desired to fill out a playslip for the Powerball lottery game at any of its nearly 8,000 convenience store locations that the stores are owned by franchise and not corporate owned. Typically, franchise owned businesses have the name of the franchise owner posted in the front of the business.

107.    Defendant Sharma had a duty to alert the Plaintiff and the general public who desired to play the Powerball lottery at her 7-Eleven franchise that she employs undocumented/ illegal aliens workers and untrained workers who are not supervised.

108.    MUSL, TLC, 7-Eleven, and Sharma are liable to the Plaintiff because these defendants and its employees, agents, and representatives: 1). "fail[ed] to exercise reasonable care" and "increase[d] the risk of . . . harm" to the Plaintiff by:

    a).    MUSL and TLC failing to incorporate the cut-off and or closing time for the Powerball on the back of its game play slips or by signs in the convenience stores;

34

b).   7-Eleven failing to alert the Plaintiff and other consumers of the fact that Defendant Sharma employs undocumented and or illegal alien workers and untrained workers which were not properly supervised;

c).   Failing to alert the Plaintiff and other consumers of the fact that 7-Eleven *does not monitor or care to monitor whom its franchise owners hire for its* employees, including if the franchises owners like Sharma hires undocumented and or illegal alien workers and untrained workers; and workers *who are not supervised that possibly have extensive criminal* records;

d).   MUSL and TLC failure to post signs in the convenience stores which MUSL and TLC have its gaming products of the cut-off and or closing time for the Powerball lottery, and other lottery games.

109.   The harm was suffered by the Plaintiff because of his reliance on Defendants MUSL, TLC, 7-Eleven, and Sharma would take reasonable steps to protect him and the general public from fraud, deceptive and unfair conduct, and that all employees were reasonably trained and could speak and understand the English language.

110.   The risk of harm was undoubtedly inherent to the MUSL and TLC because it was fully aware that the organization nor any of its agent convenience stores posted signs alerting consumers of the cut-off time to play the Powerball lottery game in August of 2017. Defendants MUSL, TLC, 7-Eleven, and Sharma put profits ahead of informing the Plaintiff and the general public of the closing time to play the Powerball lottery, which was extremely important in playing the Powerball lottery.

111.   Defendant MUSL and TLC failed to employ reasonable protection of the Plaintiff and the general public, by failing to take practical provisions of incorporating the cut-off or closing time on the game playslips. The inadequate warnings and lack of warning on the playslips, and failure to employ posters or signs in the convenience stores

that carried MUSL and TLC gaming products, as well as MUSL and TLC failure to warn or caution the Plaintiff and the general public of the cut-off or closing time to play the Powerball lottery game in August of 2017 was a determining factor of the Plaintiffs lost to his demise. And as a result, the Plaintiff lost millions of dollars.

112. MUSL, TLC, 7-Eleven, and Sharma were negligent, careless, and are guilty of other wrongdoings and actions described herein, which caused Plaintiff to suffer injuries and damages as described with particularity, as described throughout this compliant.

113. As a direct and proximate cause of the Defendants MUSL, TLC, 7-Eleven, and Sharma negligence in failing to warn, the Plaintiff suffered emotional pain, and prohibition in participating in the August 2017 Powerball lottery.

**EIGHTH CAUSE OF ACTION**

**COUNT 8.   EXEMPLARY DAMAGES AND VICARIOUS LIABILITY**

114. Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

115. Plaintiffs injuries resulted from Defendants MUSL, TLC, 7-Eleven, and Sharma employees gross negligence, which entitles Plaintiff to exemplary damages.

116. Defendants MUSL, TLC, 7-Eleven, and Sharma committed actual malice, and negligence, which entitles Plaintiff to exemplary damages under Texas State Codes.

117. Plaintiffs injuries resulted from Defendants MUSL, TLC, 7-Eleven, and Sharma employees gross negligence, malice and the Plaintiff is entitled to exemplary damages as authorized by Texas State Codes.

### NINTH CAUSE OF ACTION

**COUNT 9.    VICARIOUS LIABILITY
PRINCIPAL-AGENT LIABILITY-ACTUAL AUTHORITY**

118. Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

119. Defendant Sharma is a franchise owner of a 7-Eleven convenience store. Defendant Sharma and her employees have actual authority to act on behalf of the Defendants MUSL, TLC, and 7-Eleven. Defendants MUSL, TLC, 7-Eleven, and Sharma and its agents, representatives, and Commissions failed to undertake adequate safety measures of making sure that the playslips for the August 2017 Powerball lottery incorporated the closing time for the Powerball lottery game. It was imperative that the Plaintiff and other consumers know when the Powerball lottery game closes. However, Defendants MUSL, TLC, 7-Eleven, and Sharma was negligent in alerting the Plaintiff and other consumers to the closing time to play the August 2017 Powerball lottery. Thus, Defendants MUSL, TLC, 7-Eleven, and Sharma violated Texas State Codes. Vicarious liability arises from the principal's right of supervision and control over the agent's performance. *Doe v. Forrest,* 176 Vt. 476, 853 A.2d 48 (Vt. 2004) Texas Power Co. v. Beam, 472 So.2d 619 (Ala.1985). *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). See *Lifestar Response of West Virginia, Inc. v. Admiral Ins. Co.,* 17 So.3d 200, 213 (Ala. 2009). The parties' characterization of their relationship is of no consequence; the facts of the relationship control the issue. *Faragher,* 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)).

## TENTH CAUSE OF ACTION

**COUNT 10.** **VICARIOUS LIABILITY**
**PRINCIPAL-AGENT LIABILITY-RESPONDENT SUPERIOR**

120.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

121.    As an employer Defendant MUSL and TLC is liable for the actions and employees that it oversee and administer. Defendant 7-Eleven is liable for the actions of the franchise owner, Sharma actions and its employees. Defendant Sharma is liable for the actions of the undocumented/ illegal aliens workers and untrained workers actions. Defendants MUSL, TLC, 7-Eleven, and Sharma are vicariously liable for the torts of an employee acting within the scope of employment even though the employer did not personally commit the tort. *Goodyear Tire & Rubber Co., v. Mayes.* Defendant Sharma, franchise owner of the 7-Eleven convenience store in question violated Texas State Codes. *Jones Exp., Inc. v. Jackson*, 86 So. 3d 298 (2010). The actual harm to Plaintiff occurred while Sharma and her undocumented/ illegal aliens workers and untrained workers provided Plaintiff with false, misleading, incorrect, deceptive and untrue information while acting within the scope of their employment as set forth herein.

## ELEVENTH CAUSE OF ACTION

**COUNT 11.** **VICARIOUS LIABILITY AND AIDING AND ABETTING**

122.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

123. TLC, and 7-Eleven conduct aided Defendant Sharma to hide the fact that she hired undocumented and or illegal aliens workers and untrained workers and that the unidentified worker gave the Plaintiff incorrect information regarding the cut-off and or closing time for the Powerball lottery in August of 2017.

124. Plaintiff claims exemplary damages against Defendants MUSL, TLC, 7-Eleven, and Sharma through its employees, agents, and representatives. Plaintiff is asserting a vicarious liability claim against Defendants MUSL, TLC, 7-Eleven, and Sharma.

125. The Supreme Court recognizes aiding and abetting as a theory for imposing joint liability as in this case. Therefore there is joint vicarious liability regarding MUSL, 7-Eleven, and Sharma through its employees, agents, and representatives. *Kinzbach Tool Co. v. Corbett-Wallace Corp.* Since the 1930s, Texas courts have assumed a defendant can be liable for a tort under the theory of aiding and abetting.

## TWELFTH CAUSE OF ACTION

**COUNT 12.   VICARIOUS LIABILITY AND CONSPIRACY**

126. Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

127. Civil conspiracy pursuant to vicarious acts are a type of participatory liability used to establish join several defendants liability for those who participate in an agreement to commit a tort. Defendants 7-Eleven, and Sharma through its employees,

agents, and representatives conspired together to cover up claims the fact that Defendant Sharma had hired undocumented/ illegal aliens workers and or workers untrained and unsupervised at her 7-Eleven franchise convenience store.

## THIRTEENTH CAUSE OF ACTION

**COUNT 13.    VICARIOUS LIABILITY
PRINCIPAL–AGENT LIABILITY—RATIFICATION**

128.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

129.    Plaintiff was harmed by the actions of the Defendants MUSL, TLC, 7-Eleven, and Sharma through its employees, agents, and representatives. Defendant's 7-Eleven, and Sharma through its employees, agents, and representatives conspired to cover up claims the fact that Defendant Sharma had hired undocumented/ illegal aliens workers at her 7-Eleven franchise convenience store. Defendant Sharma was committing a federal crime by hiring undocumented/ illegal aliens workers.

40

## FOURTEENTH CAUSE OF ACTION

**COUNT 14.   VICARIOUS LIABILITY**
**PRINCIPAL–AGENT LIABILITY—VICE-PRINCIPAL**

130.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

131.   Plaintiff seeks exemplary damages from Defendants MUSL, TLC, 7-Eleven, and Sharma because of its vicarious liability through its employees, agents, and representatives. Plaintiff claims actual damages, exemplary damages and joint and several liabilities against Defendants MUSL, 7-Eleven, and Sharma through its employees, agents, and representatives.

132.   Defendants MUSL, TLC, 7-Eleven, and Sharma had to have some knowledge of the overt act committed by its agents and representatives or employees as described herein, and even if they didn't it would not alleviate its responsibility or accountability to the Plaintiff for damages.

## FIFTEENTH CAUSE OF ACTION

**COUNT 15.   PLAINTIFFS REQUEST A COURT ORDER TO
RESCIND THE AUGUST 2017 POWERBALL LOTTERY**

133.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

134.   On August 23, 2017 the Powerball was $700,000,000.00. Millions of people played that game, being that it was one of the highest Powerball's in history. The Plaintiff who normally does not play Powerball was enticed into playing the lottery game.

135.   Unlike the Plaintiff, Defendant Mavis L. Wanczyk played her numbers on August 23, 2017 for the Powerball game and she alone won the grand prize of Seven Hundred Million dollars. However, the Plaintiff who was not a regular Powerball lottery player did not have the opportunity to play the Powerball on August 23, 2017 because representatives of MUSL, and an agent of MUSL (a franchise owner) Defendant Sharma employed an undocumented and or illegal alien worker and untrained worker, who provided Plaintiff with the wrong time to play the Powerball lottery in August of 2017. Plaintiff wrote Defendant Wanczyk a letter to inform her of the controversy regarding the August 2017 Powerball lottery, but was unable to serve her.

136.   As pled herein, the conduct of Defendants MUSL, 7-Eleven, and Sharma were unfair to the Plaintiff in that he wasn't provided the correct cut-off or closing time to play the Powerball lottery.[1]

---

[1] Seifert v. Buhl Optical Co., 276 Mich. 692, 268 N.W. 784, 787 (1936) ("Suit may be brought by parties engaged in a profession or business to enjoin unfair trade and practice which would be injurious to their interests, and the fact that such practices are punishable by criminal penalties is immaterial.")

137.    A sweepstakes or lottery is legal if it discloses the terms and conditions of the contest, the sponsor and the sponsor's address, the odds of winning, and discloses that an alternative free method of entry is available. However in this case, the Defendants MUSL, TLC, 7-Eleven, and Sharma failed to provide an important part of playing the August 23, 2017 Powerball lottery, the cut-off or closing time for the game, which is critical to playing the Powerball lottery game. It is not unusual for a sweepstakes prize, or lottery prize to be rescinded if the organization of the sweepstakes or lottery is guilty of fraud or unfair trade practices as in this case before the Court.

138.    Therefore, the Plaintiff ask the Court as an alternate resolution to this legal matter, to rescind the August 2017 Powerball lottery drawing, because the Plaintiff unlike all other consumers who desired to play and did play the August 2017 Powerball lottery, Plaintiff did not have an opportunity to play the Powerball lottery. Further, an even more moving reason to rescind the lottery is that the Plaintiff was prevented from playing his numbers for the August 2017 Powerball lottery by the Defendants actions. The fact that TCL, 7-Eleven, and Sharma did not respond to the letters that the Plaintiff wrote to them signify that they were trying to cover up the fact that the Plaintiff lost millions of dollars and they were responsible for the Plaintiffs damages.

139.    Further, that the Court orders the MUSL and MSLC to confiscate or seize the remaining funds paid out to Mavis L. Wanczyk until this legal matter is resolved.

## SIXTEENTH CAUSE OF ACTION
## DEPRIVATION OF RIGHTS UNDER — 42 USC § 1981

**COUNT 16.   DEPRIVATION OF RIGHTS**

140.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

141.   Plaintiff is an African American. MUSL is an association that administers and manages the Powerball lottery and other games, which consist of predominantly white executives. 7-Eleven operate convenience stores worldwide consist of predominantly white executives. Alon owns and operates 7-Eleven convenience stores in the United States and consist of predominantly white executives. Defendant Sharma appears to be from the Country of Indian; however, she considers her race to be white. The acts committed by Defendants MUSL, TLC, 7-Eleven, and Sharma and its employees, agents and representatives as pled herein deprived the Plaintiff, Plaintiff, a member of a racial minority, of the rights, privileges and immunities guaranteed to citizens of the United States in violation of 42 USC §§ 1981.

142.   The acts complained of were carried out by the aforementioned organizations, companies, and individuals who were employees or representatives of Defendant MUSL, TLC, 7-Eleven, and Sharma to deprive Plaintiff of his right to the performance of the implied contract between the Plaintiff and MUSL and its agents.

143.   Defendants MUSL deprived the Plaintiff of the contractual relationship by its refusal and or failure to instruct lottery commissions to incorporate on its Powerball playslips the cut-off and closing time to play the Powerball lottery. 42 USC § 1981 states:

44

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . ."

"For purposes of section §1981, the term "make and enforce contracts" includes the ***making***, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

144.    Defendant Sharma prohibited the Plaintiff from playing the August 23, 2017 Powerball lottery because she employed undocumented and or illegal alien workers and untrained and unsupervised workers who told the Plaintiff the incorrect cut-off or closing time for the August 23, 2017 Powerball. Plaintiff desired to make a contract with Defendant MUSL and TLC through Defendant Sharma; however, Plaintiff was not allowed to make his contract with MUSL and TLC to play the August 23, 2017, on account of Defendants MUSL policies and customs and Sharma's employee.

145.    Defendant 7-Eleven also infringed on the Plaintiff making a contract with MUSL because 7-Eleven allowed Defendant Sharma to employ undocumented and or illegal alien workers, and untrained workers who were unsupervised by Defendant Sharma and who provided the Plaintiff with false and misleading information to his demise. If 7-Eleven would have had a more strict guidelines for its franchise owners hiring practices, and if 7-Eleven had its own coaching and training program, Defendant Sharma would not had hired undocumented and or illegal alien workers, and untrained workers, and Plaintiff would have known the correct cut-off time, which he would have made his contract with MUSL, thus he would have secured a contract with MUSL, regarding the prize money.

45

146.    Defendants MUSL, TLC, 7-Eleven, and Sharma deprived the Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship as pled herein.

147.    Pursuant to §1981, Plaintiff has every right to make and enforce contracts. Plaintiff has shown the Court that if not for Defendants Sharma employee instructing the Plaintiff incorrectly of the cut-off time to play the Powerball, or MUSL and TLC failure to incorporate the closing time to play the game on its playslips, the Plaintiff would have had a contract with MUSL. Plaintiff by this suit is enforcing the contract that he would have had otherwise than the breach, negligence, and violations of the Plaintiffs rights. 42 USC §1981 also protects against impairment by nongovernmental discrimination.

148.    Section 1981 itself protects the right of _all_ persons within the jurisdiction of the United States to "**_make and enforce contracts_**." 42 U.S.C. § 1981(a).[2] In addition, the rights drawn out in § 1981(a) are protected from "impairment by nongovernmental discrimination," as well out right denial by the statute. 42 U.S.C. § 1981(c).

149.    There is no Fifth Circuit law on this precise issue, but Plaintiffs claim that impairment of the right to make contracts is cognizable. Other circuits have recognized, even in the era of _Patterson_, that a claim for discriminatory interference with the making of a contract with a third party is covered by § 1981. _See_,e.g., _Daniels v. Local Pipefitters Ass'n Local Union_ No. 597, 945 F.2d 906, 913-916 (7th Cir. 1991).

150.    Further, if § 1981 is to have any teeth, especially in the case at bar, the Plaintiffs need to make the contract with MUSL, is just as important as to enforce the

---

[2]Just to maintain clarity, this court is citing to subsections (a),(b), and (c) of § 1981, and not to the distinct 42 U.S.C. § 1981a.

contract with MUSL. Moreover, Defendants Sharma offer to the Plaintiff of a cup of coffee, when Ms. Sharma's undocumented and untrained employee had caused the Plaintiff the lost of millions of dollars, is comparative to permissive racism.

151.    Apparently, TLC and 7-Eleven did not respond to the Plaintiffs letters not only to silence the millions of dollars that the Plaintiff lost, but also because a 7-Eleven franchise owner employed undocumented and or illegal alien workers, and untrained workers, therefore it was an effort to cover-up an immigration crime. This would have impacted 7-Eleven nationwide in a negative manner. However, on account of the Plaintiff race, he wasn't considered worth the time to respond by TLC or 7-Eleven whose executive team is predominantly white. For all the reasons stated herein, the Plaintiff assert his §1981 claim against the aforesaid Defendants for preventing the Plaintiff to make a contract with MUSL, and to *enforce* the contract that the Plaintiff would have possessed if it were not for the breach and negligence conduct of MUSL, TLC, 7-Eleven and Sharma.

### SEVENTEENTH CAUSE OF ACTION
### DEPRIVATION OF RIGHTS UNDER — 42 USC § 1983

**COUNT 17.**   **DEPRIVATION OF RIGHTS**

152.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

153.   The acts committed by Defendant MUSL and TLC and its employees as pled herein deprived the Plaintiff, Plaintiff, a member of a racial minority, of the rights, privileges and immunities guaranteed to citizens of the United States of the Fourteenth Amendment to the United States Constitution in violation of 42 USC §1983. Defendant MUSL qualifies as entity acting under color of state law.

154.   Defendant MUSL and TLC denied Plaintiff an equal opportunity to play the August 23, 2017, Powerball lottery because MUSL failed to instruct and or train its various 47 Lottery Commissions, (TLC) to incorporate the cut-off or closing time for the Powerball lottery closure on the playslips of the Powerball, and to train or instruct its various Lottery Commissions to ensure its partners have the convenience stores 'post' Signs in the stores that sells and markets its products of the cut-off and closing time to play the Powerball lottery. The various lottery commissions, including the Texas Lottery Commission cannot make any changes to the playslips without the consent of the MUSL.

155.   There is a causal connection between MUSL's and TLC actions and the harm caused to the Plaintiff. MUSL and TLC policies or customs was the "moving force" behind Plaintiffs deprivation. The MUSL controls and manages over 46 Lottery Commissions, and even though the separate commissions print the playslips and distributes the playslips to the local stores that supports the lottery gaming products and

48

Powerball these Lottery Commissions are unable to make changes in its playslips, on information and belief, without the consent of MUSL.

156.   MUSL failed to train its employees, and or failed to instruct its Lottery Commissions, (TLC) to incorporate the cut-off and closing time on its various Lottery Commissions playslips for the Powerball. MUSL's failure to train or to instruct its Lottery Commissions, (TLC) amounts to deliberate indifference to an obvious need for such training, which there is a need to have the cut-off or closing time incorporated in writing on the back of the playslips, which would prevent its Lottery Commissions and their partners, such as 7-Eleven franchises employees nationwide from making wrong decisions or as in the case at bar, having a new employee to provide a consumer with the wrong information that causes him millions.

157.   MUSL and TLC policies and customs are unconstitutional because those policies infringe upon the rights of the Plaintiff and other consumers to make contracts with the MUSL's many Lottery Commissions as pled.

158.   As a result of the foregoing, Plaintiff is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual Defendants in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursements of this action.

## EIGHTEENTH CAUSE OF ACTION

**COUNT 18.    FAILURE TO INTERVENUE UNDER 42 U.S.C. § 1983**

159.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

160.    Defendant MUSL and 7-Eleven upper management had an affirmative duty to intervene on behalf of Plaintiff, whose constitutional rights had been violated by one of its agents and or franchise owners, the 7-Eleven store that made the basis of this lawsuit on or about August 23, 2017.

161.    The Plaintiff forwarded a letter to the director of MUSL, director of Texas Lottery, and the CEO of 7-Eleven complaining of the facts contained in this litigation that an employee of the 7-Eleven in question provided the wrong time to play the Powerball resulting in the Plaintiff inability to play the game. Plaintiff received no responses from MSUL, Texas Lottery, or 7-Eleven.

162.    Plaintiff had a right to play the August 23, 2017 Powerball Lottery just like the winner and thousands of other people, but he was forbid in playing the game. Plaintiff received no response from the management of MUSL, Texas Lottery, and 7-Eleven on account of his race in violations of Fourteenth Amendment.

163.    As a result of the foregoing, Plaintiff, is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the Defendants MUSL, Texas Lottery, 7-Eleven, and Sharma in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursement of this action.

## NINETEENTH CAUSE OF ACTION

**COUNT 19.   SUPERVISORY LIABILITY UNDER 42 U.S.C. § 1983**

164.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

165.   For the reason that the employee of the 7-Eleven in question is employed by Defendants Sharma, and the fact that Defendants Sharma is a franchise owner, and that MUSL oversees its members, TLC; Sharma had an affirmative duty to the Plaintiff and MUSL and TLC had a affirmative duty likewise to the Plaintiff. That duty consists of MUSL instructing and or training its members such as TLC and supervising its members and providing them with proper Playslips.

166.   Likewise, TLC had a duty to instruct and train its franchise owners, to the point of even training them of how to train their employees. Unquestionably, the unknown at this time employee of the 7-Eleven in question lacked proper training, which led to the harm caused to the Plaintiff as pled herein, which caused constitutional injury to the Plaintiff by deliberately or consciously indifferent to the rights of others in failing to properly supervise and train the clerk who provided the Plaintiff with the incorrect time for the cut-off for the August 2017 Powerball.

167.   As a result of the foregoing, Plaintiff, is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the Defendants MUSL, Texas Lottery, 7-Eleven, and Sharma in an amount to be fixed by a jury, plus reasonable attorney's fees, costs and disbursement of this action.

## TWENTIETH CAUSE OF ACTION

### COUNT 20.    VIOLATION OF 42 USC § 2000a DISCRIMINATION

168.    Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

169.    All of the aforementioned acts of Defendants MUSL, Texas Lottery, 7-Eleven, and Sharma, were carried out under the color of law.

170.    All of the aforementioned acts of the Defendants MUSL, Texas Lottery, 7-Eleven, and Sharma deprived the Plaintiff, a member of a racial minority and a protective class, of the rights, privileges and immunities guaranteed to citizens of the United States by the Constitution of the United States of America, and in violation of 42 U.S.C. § 2000a.

171.    All persons shall be entitled to the full and equal enjoyment of the goods, *services*, facilities, *privileges* (the privilege to play the Powerball game just like other people), advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

172.    Plaintiff have the same rights to the services of the 7-Eleven stores that promote and supply lottery game Playslips and make profit from those lottery games as other people. But because of the fault and breach of those entitlements, the Plaintiff was not allowed to plays the August 2017 Powerball game because he was provided with the wrong information of the game's cut-off time.

173.     The Plaintiff has used the 7-Eleven store which is the basis of this lawsuit several times to buy gasoline and snacks. Plaintiff wasn't prevented from coming in the store to make a purchased but he was prevented from participating in the August 2017 Powerball Lottery for the reason that Defendants MUSL, TLC, 7-Eleven, and Sharma's conduct which misled the Plaintiff. Thus, Defendants MUSL, Texas Lottery, 7-Eleven, and Sharma violated the Plaintiffs protective rights under the First and Fourteenth Amendment rights and Plaintiffs right of services and privileges.

174.     The Plaintiff has been harmed by the actions of Defendants MUSL, Texas Lottery, 7-Eleven, and Sharma and its employees.

175.     As alleged herein, as direct and proximate result of Defendants MUSL, Texas Lottery, 7-Eleven, and Sharma conduct and actions, Plaintiff has suffered injuries. Plaintiff continues to suffer.

## TWENTY-FIRST CAUSE OF ACTION

## COUNT 21.     EQUAL PROTECTION — 42 USC § 1983

176.     Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

177.     As alleged herein, as a direct and proximate result of the Defendants MUSL, TLC, 7-Eleven, and Sharma's discriminatory, unfair, and biased actions pursuant to 42 USC § 1983, Plaintiff pleads a cause of action against the Defendants MUSL, TLC,

53

7-Eleven, and Sharma's for violation of his equal protection rights, constitutional rights, and have discriminated against Drake. Plaintiff further shows as follows:

a). Plaintiff is a citizen of the United States of America within the meaning of Title 42 and belongs to a protected class under the statute, namely his race, African American.

b). The actions of Defendants MUSL, TLC, 7-Eleven, and Sharma's were intentional or depraved indifference because of a lack of training and or supervision as pled herein, which caused Plaintiff damages.

178. Defendants MUSL, TLC, 7-Eleven, and Sharma's denied Plaintiff an equal opportunity to play the August 2017 Powerball game because of its lack of training and supervision. Defendants MUSL, TLC, 7-Eleven, and Sharma's failure to respond to the Plaintiffs letters was directly related to the Plaintiffs race and Defendants MUSL, TLC, 7-Eleven, and Sharma's belief apparently that the Plaintiff wasn't due an answer for the substantial lost that occurred to the Plaintiff as pled herein on account of Defendants MUSL, TLC, 7-Eleven, and Sharma's lack of training, supervision, and negligence.

179. Plaintiffs right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution was violated by this denial of equal access to play the Powerball games and provided correct information.

180. Plaintiff has a cause of action for violation of her constitutional right to equal protection, under the Civil Rights Act, 42 U.S.C. § 1983.

181.    As alleged herein, as direct and proximate result of the Defendants MUSL, TLC, 7-Eleven, and Sharma's negligence, intentional wrongful conduct, failure to train and supervise, Plaintiff has suffered injuries.

## TWENTY-SECOND CAUSE OF ACTION

## COUNT 22.   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

182.   Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

183.   Defendants MUSL and TLC through its employees and agents caused infliction of emotional distress upon the Plaintiff. 7-Eleven non-caring approach to its franchise owners created an environment in the 7-Eleven franchise owners that they could hire the cheapest possible labor, even undocumented and illegal aliens or untrained and unsupervised workers. Under those given circumstances, training was implemented by trial and error, because Defendant Sharma did not supervise her employee who gave the Plaintiff incorrect information. Defendant MUSL, TLC, 7-Eleven, and Defendant Sharma conduct was intentional and reckless and it caused intentional infliction of emotional distress by:

a).   Defendant Sharma extreme and outrageous conduct in exposing the Plaintiff and other 7-Eleven customers to her employee who was an undocumented and or illegal alien that were not trained or supervised which caused the Plaintiff millions of dollars by the employee providing the Plaintiff with the wrong cut-off or closing time to play the August 23, 2017 Powerball lottery.

b).   Defendant 7-Eleven extreme and outrageous conduct in commenting that its franchises hiring of illegal aliens is not there concern, which was the root cause of what occurred to the Plaintiff because Defendant Sharma knew that this conduct of hiring undocumented workers was illegal but acceptable to Defendant 7-Eleven. Defendant Sharma apparently wanted to cut her labor cost to increase her profits at the Plaintiff and the general public demise;

56

c).     Defendants MUSL extreme and outrageous conduct of making millions on the various lottery games, but refusing to instruct the various Lottery Commissions that it manages to incorporate the closing time for the Powerball on the lottery playslips.

d).     Defendants TLC, 7-Eleven, Sharma extreme and outrageous conduct went beyond all possible bounds of decency when they apparently decided not to respond to the Plaintiffs letters in hopes that he would not file a timely claim to the $700,000,000.00 he lost because of the gross negligence of an undocumented and untrained worker and unsupervised worker that Defendant Sharma employed in August of 2017;

184.     Defendants extreme, outrageous, negligent conduct through its employees was a proximate cause of the Plaintiff's emotional distress, injuries, and damages as set forth herein.

185.     To sustain an award of punitive damages, Plaintiff must prove, by a preponderance of the evidence, that the Defendants committed a tortious act, and by clear and convincing evidence that the act was accompanied by conduct and a state of mind evincing malice or its equivalent.

186.     Since MUSL and its staff, management, and employees knew that there was no indication of a cut-off or closing time on the playslips for at least 46 Lottery Commissions, which it manages, nor were there any Posters, or Signs in the convenience stores that sells lottery products for its Lottery Commissions, so that consumers like the Plaintiff would not know of the cut-off time or closing time for the Powerball lottery.

187.     Therefore, MUSL, TLC, 7-Eleven, and Sharma were negligent and breached the Plaintiffs rights to play the August 23, 207 Powerball through the Defendants actions or inactions.

188.    Defendants MUSL, TLC, 7-Eleven, and Sharma's conduct has cause extreme emotional pain. Therefore, the Plaintiff is requesting punitive damages for the emotional distress that the Defendants caused with an intent to harm the Plaintiff by the Defendants.

## DAMAGES

189.    As a direct and proximate result of Defendants' conduct as pled herein, Plaintiff has suffered damages.

190.    Plaintiff has suffered and is continuing to suffer mental anguish on account of Defendants behavior towards him as pled herein. Plaintiff is seeking an order from this Court decreeing that Defendants will pay the Plaintiff damages as set forth herein in this original petition of $2,800,000,000.00 (4 times the Powerball jackpot amount) because of §1981, §1983 and other federal violations as pled herein, gross negligence as pled herein, breach as pled herein, and the Plaintiff was prohibited from having an opportunity to play the August 23, 2017 Powerball lottery as a result of the policies, actions, and conduct of the Defendants named herein.

191.    In addition, Plaintiff by this action, seeks compensatory and punitive damages as pled herein, expert witness fees, cost, interest, and other causes of actions pled herein and for all other monies and damages to which he may be entitled and:

- Attorneys' fees for preparation and trial;
- Attorneys' fees if there is to be an appeal to the Court of Appeals;
- Attorneys' fees if there is to be an appeal to the U.S. Supreme Court;
- Incidental damages;
- Past mental anguish;
- Future and past emotional distress;

1. Trebled damages for knowingly and willfully causing harm to the Plaintiff;

2. Plaintiff respectfully requests that the Court grant additional damages as already pled herein and for declaratory judgment and other causes pled herein.

## ATTORNEYS' FEES, COSTS & INTEREST

192. Plaintiff incorporates by referencing in these causes of action every averments set forth in Plaintiffs original petition. If any averments or requests for relief are inconsistent, they are pleaded in the alternative.

193. Plaintiff hereby sues for the recovery of reasonable attorneys' fees, costs of court and pre-and post-judgment interest at the highest rates to which he is entitled.

## REQUEST FOR JURY TRIAL

194. Plaintiff hereby requests a jury trial on all matters set forth in his original petition as pled to this Honorable Court.

## PARYER FOR RELIEF

195. Plaintiff prays for a judgment against Defendants and it agents, employees, lawyers, and representatives and each of them as follows:

1. Special damages for Plaintiff in the amount of $700,000,000.00 times (four);

2. General damages for Plaintiff in an amount to be determined at trial;

3. Punitive Damages in an amount to be determined at trial;

4. Cost of suit;

5. Attorney fees for preparation and trial;

6.    Attorney fees if there is to be an appeal to the U.S. Supreme Court;

7.    Incidental damages;

8.    Past and future emotional distress;

9.    Trebled damages for willfully causing harm to the Plaintiff;

10.    Prejudgment interest;

11.    Injunctive and Declaratory Relief;

12.    For such other and further relief as the court deems just and proper.

## **PRAYER**

196.    WHEREFORE PREMISES CONSIDERED, Plaintiff hereby prays that he is awarded compensatory damages, reasonable attorneys' fees, costs of court and pre-judgment and post-judgment interest at the highest rates to which he is entitled to receive; and for such other proper relief to which Plaintiff is entitled.

197.    Plaintiff further request the Court to grant such other and further relief as the Plaintiff as prayed for in its entirety and as it appears reasonable and just, to which he may shows himself entitled.

Respectfully submitted,

Klager E. Drake
P.O. Box 803742
Brownsville, TX 78520
903-453-7880
k.canard.fido7@gmail.com

# Exhibit "A"

## Declaration of Klager E. Drake

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNVILLE DIVISION

**Klager E. Drake**                    **Case Number:** _____

**v.**

**M. AMCZYK, RAKHEE P. SHARMA, PAWAN R. SHARMA, 7-ELEVEN INC., TEXAS LOTTERY COMMISSION, AND MULTI-STATE LOTTERY ASSOCIATION**

## DECLARATION OF ERIC DRAKE
## IN SUPPORT OF HIS ORIGINAL COMPLAINT

My name is Eric Drake; I am the Plaintiff in the above referenced cause of action. Plaintiff shall be referred to herein as the affiant and testifies as follows:

1.    Affiant is over 18 years of age, of sound mind, and capable of making this declaration. The facts stated in this declaration are within the personal knowledge of the affiant and are true and correct.

2.    The August 23, 2017 Powerball lottery shall be referred to as "Powerball," or "Lottery." The 7-Eleven convenience store that made the basis for this lawsuit shall be referred to as "7-Eleven." Rakhee P. Sharma, the franchise owner of the 7-Eleven shall be referred to as "Sharma."

3.    On August 23, 2017, the affiant picked his numbers for the Powerball lottery. The lottery was $700,000,000.00 (Seven Hundred Million Dollars).

4.    Affiant planned to play the lottery later on that day before the game closes, but he was unsure when was the cut-off or closing time to play the Powerball. Affiant asked a clerk or employee of the 7-Eleven what was the cut-off or closing time to play the Powerball. The clerk advised the affiant that the cut-off or closing time was 9:30 p.m.

**DECLARATION OF ERIC DRAKE IN SUPPORT OF ORIGINAL COMPLAINT          PAGE 1**

5.    The reason why the affiant had to ask the clerk for the cut-off or closing time, was because the cut-off or closing time to play the Powerball was not on the back of the playslips nor did he notice any signs in the 7-Eleven that provided this information.

6.    On August 23, 2017, the affiant attempted to play the numbers that he selected to play the Powerball, however, affiant was unable to play the numbers he selected at 9:15 p.m., because the Powerball game had closed to the public at 9:00 p.m.

7.    On August 24, 2017, the affiant returned to the 7-Eleven and spoke with the store manager by the name of Sharma. Rakhee Sharma apologized to the affiant and said that the employee that provided affiant with the wrong information was new, and that the employee had made a mistake.

8.    Sharma also provided her cell number to the affiant, and she said that she would check with the Lottery Officials. She offered affiant free coffee.

9.    On August 25, 2017 affiant drove back to the 7-Eleven store and spoke with Sharma again. Affiant asked her if she had spoken to the employee that provided affiant with the wrong information about the cut-off or closing time for the lottery. Sharma admitted that she spoke to her employee, and that the employee recalled providing the wrong information to affiant about the cut-off time to play the Powerball.

10.    Rakhee has not provided any additional information to the affiant of as of the date of this declaration on whether she had spoken to the Lottery Officials.

I, the affiant declare under penalty that the foregoing is true and correct.

Executed on this the _____ day of January 2019.

_____
Eric Drake

**DECLARATION OF ERIC DRAKE IN SUPPORT OF ORIGINAL COMPLAINT          PAGE 2**

# Exhibit 1

Powerball Lottery Playslip Front and Back

## HOW TO PLAY POWERBALL*

- Each playslip has five playboards (Play A-E). You may play up to five sets of numbers on one playslip.
- Use a soft, lead pencil or blue or black ink. Choose five (5) numbers from 1 – 69 in the upper play area. Next, choose one (1) Powerball number from 1 – 26 in the lower play area.
- Do not erase. Use one board for each set (5/69, 1/26) chosen. Mark your choice with a heavy vertical mark in the box with the number you want to play.
- Each board played costs $2.00. If you want the terminal to pick your numbers for you, mark the appropriate "QP" boxes.

## MULTI-DRAW OPTION

- You may play the same numbers for more than one drawing. Mark the appropriate Multi-Draw box to play up to 10 consecutive drawings.
- Powerball tickets cannot be canceled after they are processed.
- Before submitting your playslip, make sure the numbers you choose are the ones you want.

## GRAND/JACKPOT PRIZE PAYMENT OPTION

- When you buy a ticket, you must select how you want to be paid if you win the Grand/Jackpot Prize.
- Mark "30 Annual Payments" for payment of a Grand/Jackpot Prize in 30 annual graduated installments.
- Mark "Cash Value Option" for a single payment of the net present value of a Grand/Jackpot Prize.
- You may not change the payment option at a later date. If you do not select a payment option your playslip will be rejected.

## HOW TO PLAY POWER PLAY*

- You can increase your non-grand/jackpot prizes with the Power Play option. To play Power Play, mark the "YES" box.
- Power Play wagers must equal the number of Powerball wagers on a playslip. Selecting Power Play increases the price of your ticket. Power Play costs an additional $1 per playboard. Power Play does not apply to a playboard resulting in a grand/jackpot prize win.
- * * * Players purchasing the Power Play option and matching five (5) numbers without the Powerball automatically WIN $2 MILLION. See the complete Power Play prize chart at txlottery.org

## RULES

- A ticket, not a playslip, is the only valid proof of number selection and is the only valid receipt for claiming a prize.
- A person must be at least 18 years old to buy a Texas Lottery* ticket.
- The Texas Lottery is not responsible for lost or stolen tickets or for tickets lost in the mail. Playslips must be completed manually.
- A person may only win one prize per play per drawing.
- Upon purchase of a ticket, players agree to abide by all the rules and regulations of the Texas Lottery.

## CLAIMING A PRIZE

- Sign ticket before claiming. Anyone who possesses an unsigned ticket may be able to claim a prize.
- Prizes over $599, up to and including $2,500,000, must be claimed at a claim center or by mail. To claim a prize by mail, send signed ticket and completed claim form to: Texas Lottery, PO Box 16600, Austin, TX 78761-6600.
- All grand/jackpot prizes and any prize over $2,500,000 must be claimed in person at Texas Lottery Headquarters in Austin. Texas Lottery retailers are only authorized to pay prizes of $599 and less. Prizes must be claimed no later than 180 days after the draw date.

**Do not fold, staple, mutilate, soil, or make unnecessary marks on this playslip. This is not a ticket.**

**Please Play Responsibly.**
**txlottery.org**
**800-375-6886**

TX-9007-02
Rev. 10/15

C2
RMF 041317



Klager E. Drake
P.O. Box 803742
Brownsville, TX 78520

January 30, 2019

Attention: Clerk of Court
Reynaldo G. Garza-Filemon B. Vela
United States Courthouse
600 E. Harrison St.
Brownsville, TX 78520

RE: *New Lawsuit*

Dear Clerk:

Please find my original petition, civil cover sheet, and application for IFP.

Should you have any questions, please contact me at: 903-453-7880 or my email address
at: k.canard.fido7@gmail.com

Yours truly,

Klager E. Drake

PRIORITY MAIL ★

ONLY TO SEAL

ONLY TO SEAL

Retail

USPS TRACKING™ INCLUDED *

DATE OF DELIVERY SPECIFIED *

UNITED STATES POSTAL SERVICE

P

**US POSTAGE PAID**

**$7.65**

Origin: 75240
02/13/19
4822280240-09

**PRIORITY MAIL 3-Day ®**

0 Lb 13.70 Oz

**1006**

EXPECTED DELIVERY DAY: 02/16/19

C016

SHIP
TO:
  600 E HARRISON ST
  BROWNSVILLE TX  78520-7176

**USPS TRACKING NUMBER**



9505 5104 7223 9044 4076 61

P S00001000060

EP14L February 2014
OD: 15 x 9.5

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

P.O. Box 803742
Brownsville, TX 78520

MAIL
United States District Court
Southern District of Texas

RECEIVED
FEB 15 2019

David J. Bradley, Clerk of Court

**TO:**   **Attention: Clerk of Court**
          **Reynaldo G. Garza-Filemon B**
          **United States Courthouse**
          **600 E. Harrison St.**
          **Brownsville, TX 78520**

PRESS FIRMLY TO SEAL

